An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1396

NORTH CAROLINA COURT OF APPEALS

Filed:  2 September 2014

IN THE MATTER OF THE FORECLOSURE OF A
DEED OF TRUST EXECUTED BY CLARENCE L.
GIBBS AND DEBORAH B. GIBBS IN THE
ORIGINAL AMOUNT OF $1,280,000.00 DATED          Dare County
MAY 16, 2006, RECORDED IN BOOK 1686,           No. 09 SP 380
PAGE 322, DARE COUNTY REGISTRY
SUBSTITUTE TRUSTEE SERVICES, INC.,
SUBSTITUTE TRUSTEE

        Appeal by respondents from order entered 15 July 2013 by

Judge John E. Nobles, Jr., in Dare County Superior Court.  Heard

in the Court of Appeals 23 April 2014.

        *The Law Office of John T. Benjamin, Jr., P.A., by John T.
        Benjamin, Jr., and James R. White, for Petitioner-Appellee.*

        *Phillip H. Hayes for Respondents-Appellants.*

        ERVIN, Judge.

        Respondents Clarence L. Gibbs and Deborah B. Gibbs appeal

from a 15 July 2013 order allowing a foreclosure sale to

proceed.  On appeal, Respondents challenge several of the trial

court's findings of fact and conclusions of law on the grounds

that Petitioner U.S. Bank National Association, as Trustee for

Citigroup Mortgage Loan Trust, Inc. 2006-AR7, Mortgage-Backed

Notes, Series 2006-AR7, had failed to establish that it was the holder of the note evidencing Respondents' indebtedness and could not, for that reason, foreclose upon their property. After careful consideration of Respondents' challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should remain undisturbed.

## I. Factual Background

Respondents own a house and lots located at 130 Fort Hugar Way in Manteo. On 16 May 2006, First Independent Mortgage Company loaned Respondents $1,280,000.00, with the resulting debt being evidenced by a note and secured by a deed of trust recorded at Book 1686, Page 322, in the office of the Register of Deeds of Dare County. According to the note and related deed of trust, Respondents were required to make monthly payments of principal and interest, with any failure to make these payments sufficient to constitute an act of default.

As a result of Respondents' failure to make the monthly payments required under the terms of the note and deed of trust, Substitute Trustee Services, Inc., acting in its capacity as substitute trustee under the deed of trust, initiated foreclosure proceedings on 8 June 2009. Although they entered into a forbearance agreement with the lender on 20 October 2009,

that agreement was terminated when Respondents failed to make required payments. After entering into a second forbearance agreement with the lender on 4 October 2010, Respondents failed to comply with the terms of that agreement as well. According to the language contained in these forbearance agreements, efforts to foreclose under the deed of trust were authorized following termination of the agreement.

On 7 June 2011, the substitute trustee filed an amended notice of hearing prior to foreclosure sale.[1] The foreclosure proceeding came on for hearing on 4 May 2012 before Anita C. Simpson, Assistant Clerk of Superior Court for Dare County. At the conclusion of that hearing, the Assistant Clerk entered an order allowing the substitute trustee to conduct a foreclosure sale in accordance with the terms of the deed of trust. On 11 May 2012, Respondents noted an appeal to the Dare County Superior Court from the Assistant Clerk's order.

Respondents' appeal came on for hearing at the 15 July 2013 civil session of the Dare County Superior Court. At the hearing, Petitioner introduced the affidavit of Kimberly Mueggenberg, the vice president of loan documentation for Wells Fargo Bank, N.A., which established that Wells Fargo was the

---

[1]In the initial notice of sale, the petitioner was named as Citigroup Global Markets Realty Corp., care of Wells Fargo Bank, N.A. The amended petition named Petitioner as the lender instead of Citigroup.

servicing agent associated with the underlying loan and maintained custody of the business records associated with Respondents' account. According to those records, which were made in the regular course of Wells Fargo's business at or near the time of the events recorded in those records and which were based upon the personal knowledge of the person making the entries reflected in those records, First Independent Mortgage Company indorsed Respondents' note to American Home Mortgage Corporation prior to 11 September 2006, while American Home Mortgage Corporation indorsed the note "in blank" prior to 24 April 2009. Subsequently, Respondents' note was specifically indorsed to Petitioner,[2] who currently possessed the original note and had indorsed it "in blank." A number of exhibits were attached to Ms. Mueggenberg's affidavit, including a copy of the note and deed of trust. In addition to Ms. Mueggenberg's affidavit, Petitioner introduced the original note into evidence at the hearing. Although Respondents conceded the existence of a valid debt, that they had received notice of the proceeding, and that they were in default, they objected to the legal conclusions contained in Ms. Mueggenberg's affidavit concerning

---

[2]The conversion of an indorsement in blank to a specific endorsement is specifically authorized by N.C. Gen. Stat. § 25-3-205(c).

Petitioner's status as the holder of the note and as to the legal effectiveness of the indorsements reflected on the note.

On 15 July 2013, the trial court entered an order allowing the substitute trustee to proceed with the foreclosure sale. In its order, the trial court found as fact that the note had been indorsed by First Independent Mortgage to American Home Mortgage prior to 11 September 2006, had been indorsed "in blank" by American Home Mortgage prior to 24 April 2009, had been specifically indorsed by American Home Mortgage to Petitioner, and had then been indorsed by Petitioner "in blank." Based on these findings and the other evidence contained in the record, the trial court concluded that the note evidenced a valid debt owed by Respondents, that Petitioner was the holder of the note, that Respondents were in default under the note and deed of trust, that the deed of trust contained a power of sale provision authorizing Petitioner to foreclose in the event of a default, and that the proposed foreclosure sale was not barred by N.C. Gen. Stat. § 45-21.12A. As a result, the trial court authorized the substitute trustee to proceed with the foreclosure sale in accordance with the terms set out in the deed of trust. Respondents noted an appeal to this Court from the trial court's order.

## II. Substantive Legal Analysis

On appeal, Respondents argue that the trial court erred in the course of determining that Petitioner was the holder of the note that evidenced their indebtedness. More specifically, Respondents challenged the sufficiency of the evidence to support the trial court's findings of fact relating to the validity of the indorsements on the note and the trial court's conclusion of law that Petitioner held Respondents' note and was entitled to proceed with a foreclosure sale pursuant to N.C. Gen. Stat. § 45-21.16. Respondents' arguments lack merit.

## A. Standard of Review

"When an appellate court reviews the decision of a trial court sitting without a jury, 'findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary.'" *In re Bass*, 366 N.C. 464, 467, 738 S.E.2d 173, 175 (2013) (quoting *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968)). "'Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal.'" *Id.* (quoting *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004)). We will now utilize the applicable standard of review to evaluate the validity of Respondents' challenges to the trial court's order.

### B. Analysis of the Trial Court's Order

### 1. Challenges to the Trial Court's Findings

As an initial matter, Respondents argue that the trial court made several findings of fact concerning the indorsements that had been made with respect to the note on the grounds that the record was devoid of sufficient competent evidence to establish that the various indorsements had been made by individuals with the authority to act in that manner and at the time specified in the trial court's findings. More specifically, Respondents contend that the record did not contain sufficient evidence to establish that the note had been indorsed by First Independent Mortgage to American Home Mortgage, that American Home Mortgage indorsed the note in blank, that the note was subsequently indorsed to Petitioner, that Petitioner indorsed the note in blank, and that any of these indorsements had been made at any particular point in time. Respondents' arguments lack merit.

"An indorsement is 'a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of . . . negotiating the instrument.'" *Bass*, 366 N.C. at 468, 738 S.E.2d at 176 (quoting N.C. Gen. Stat. § 25-3-204(a)). "If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable

to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a 'special indorsement'." N.C. Gen. Stat. § 25-3-205(a). "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." N.C. Gen. Stat. § 25-3-205(b). According to well-established North Carolina law, there is a strong presumption in favor of the legitimacy of indorsements in order to protect the transfer of negotiable instruments "by giving force to the information presented on the face of the instrument." *Bass,* 366 N.C. at 468, 738 S.E.2d at 176.

In its order, the trial court found as a fact that the note had been indorsed by First Independent Mortgage to American Home Mortgage prior to 11 September 2006; that the note had been indorsed "in blank" by American Home Mortgage Corporation prior to 24 April 2009; that the note had subsequently been specifically indorsed to Petitioner; and that Petitioner had indorsed the note "in blank." Respondents challenge the sufficiency of the evidentiary support for these findings on the grounds that Ms. Mueggenberg's affidavit did not contain any information explaining the specific basis for the assertion that

the indorsements were authentic, that they had been made by individuals who were properly authorized to act in that manner, and that they were made at the time indicated in the affidavit concerning the authenticity of the indorsements. In support of this series of assertions, Respondents rely upon this Court's decision in *In re Bass*, 217 N.C. App. 244, 253-55, 720 S.E.2d 18, 25-27 (2011), in which we stated that "an indorsement does not prove itself, but must be established . . . by proper testimony[,]" and that, when a party challenges a signature, the burden of proving the validity of the signature, and in this case, the indorsement is on the Petitioner, and held that "the burden properly remained upon Petitioner to prove [the] validity [of the indorsements]."

Unfortunately for Respondents, however, the Supreme Court overruled our decision in *Bass*, expressly rejecting the contention that the petitioner bore the burden of proving the validity of the indorsement and stating, instead, that "[a] signature[, or indorsement, on a Note] is presumed to be authentic and authorized . . . until some evidence is introduced which would support a finding that the signature is forged or unauthorized." *Bass*, 366 N.C. at 470, 738 S.E.2d at 177 (citations omitted). Based upon that logic, the Supreme Court held that, "[u]ntil the defendant produces such evidence, the

plaintiff is not required to prove that [the signature] is valid," with the defendant being "required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence." *Id.* (citation omitted). In support of this determination, the Supreme Court noted that "[t]he UCC drafters' strong presumption in favor of the legitimacy of indorsements protects the transfer of negotiable instruments by giving force to the information presented on the face of the instrument." *Id.* at 468, 738 S.E.2d at 176. As a result, Respondents were required to elicit evidence calling the validity of the indorsements into question before Petitioner had any obligation to establish their authenticity and validity.

The original note presented by Petitioner at the hearing evidenced the following indorsements: First Independent Mortgage to American Home Mortgage; American Home Mortgage Corporation to Petitioner; and Petitioner "in blank." A careful examination of the record reveals the presence of no evidence that casts any doubt upon the authenticity or validity of the indorsements shown on the original note or indicates that the indorsements were not made at the time specified in Ms. Mueggenberg's affidavit. In light of the Supreme Court's holding in *Bass* that an indorsement on a note is "presumed to be

authentic and authorized . . . until some evidence is introduced which would support a finding that the signature is forged or unauthorized" and the fact that Respondents have not introduced any evidence tending to show that the indorsements were neither authentic nor authorized, we conclude that Respondents' challenges to the trial court's order based on the absence of evidence tending to show the validity and authenticity of the indorsements lack merit. *Bass*, 366 N.C. at 470, 738 S.E.2d at 177 (stating that the respondent's "bare assertions, with no supporting evidence, did not amount to a sufficient showing of the grounds for the denial") (citation omitted).

In addition, Respondents contend that the trial court erroneously concluded that Petitioner had proved that it, as Trustee, was authorized to hold the note. In support of this argument, Respondents argue that Ms. Mueggenberg's affidavit does not contain any assertion that she had reviewed the relevant pooling agreement to determine whether Petitioner was, in fact, entitled to proceed with the foreclosure process. N.C. Gen. Stat. § 25-3-110(c)(2) provides, however, that, "[i]f an instrument is payable to . . . a trust, an estate, or a person described as trustee or representative of a trust or estate, the instrument is payable to the trustee, the representative, or a successor of either, whether or not the beneficiary or estate is

also named[.]" As we have already noted, the note at issue here was specifically indorsed to Petitioner U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc. 2006-AR7, Mortgage-Backed Notes, Series 2006-AR7, before being indorsed "in blank." As a result, contrary to Respondents' contention, trustees like Petitioner are authorized to hold the note in a foreclosure proceeding without any necessity for the affidavit to address the pooling agreement.

Finally, Respondents argue that the fact that Petitioner had indorsed the note in blank suggested that Petitioner intended to transfer the note to a third party, a fact that effectively precluded the trial court from concluding that Petitioner held the note. However, N.C. Gen. Stat. § 25-3-205(b) provides that, "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Thus, given that the existence of an indorsement in blank does not establish that a note has been transferred and that Petitioner was in possession of the note at the time of the hearing, Respondents' argument is devoid of legal or factual support. As a result, none of Respondents' challenges to the trial court's findings relating to Petitioner's status as the holder of Respondents' note have merit.

## 2. Challenges to the Trial Court's Conclusions

In addition to challenging the trial court's findings of fact relating to the issue of whether Petitioner held Respondents' note, Respondents argue that the trial court erroneously concluded that Petitioner was the holder of Respondents' note. Once again, we conclude that Respondents' contention has no merit.

A trustee under a deed of trust is entitled to foreclose upon a tract of real property in the event that there is "(i) [a] valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) [a] right to foreclose under the instrument, [and] (iv) notice to those entitled to such . . . ." *Bass*, 366 N.C. at 467, 738 S.E.2d at 175; N.C. Gen. Stat. § 45-21.16(d). "In order to find that there is sufficient evidence that the party seeking to foreclose is the holder of a valid debt, we must find (1) competent evidence of a valid debt, and (2) that the party seeking to foreclose is the current holder of the Note." *In re Manning*, __ N.C. App. __, __, 747 S.E.2d 286, 291 (2013). The extent to which a particular party is the holder of a note is a question of law controlled by the Uniform Commercial Code, as adopted and codified in Chapter 25 of the North Carolina General Statutes. *Bass*, 366 N.C. at 467, 738 S.E.2d at 175-76.

The holder of a negotiable instrument is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]"[3]  N.C. Gen. Stat. § 25-1-201(b)(21)(a).  "[I]n determining whether a person is a holder[,] [i]t is the fact of possession which is significant . . . and the absence of possession defeats that status."  *Connolly v. Potts*, 63 N.C. App. 547, 550, 306 S.E.2d 123, 125 (1983).  "'[M]ere possession' of a note by a party to whom the note has neither been indorsed nor made payable 'does not suffice to prove ownership or holder status.'"  *In re Adams*, 204 N.C. App. 318, 323, 693 S.E.2d 705, 710 (2010) (quoting *Econo-Travel Motor Hotel Corp. v. Taylor*, 301 N.C. 200, 203, 271 S.E.2d 54, 57 (1980)).  However, "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."  N.C. Gen. Stat. § 25-3-205(b).

According to the undisputed record evidence, Petitioner was in possession of the original note at the time of the hearing. As a general proposition, the instances in which this Court has

_____

[3]The term "'[p]erson' means an individual, corporation, . . . or any other legal or commercial entity," N.C. Gen. Stat. § 25-1-201(b)(27), while the term "bearer" is "a person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument, negotiable tangible document of title, or certificated security that is payable to bearer or indorsed in blank."  N.C. Gen. Stat. § 25-1-201(b)(5).

held that possession of the original note did not suffice to show that the person in possession is the "holder" involved situations in which the note was either "(1) not drawn, issued, or indorsed to the party, to bearer, or in blank, or (2) the trial court neglected to make a finding in its order as to which party had possession of the note at the hearing." *Manning*, __ N.C. App. at __, 747 S.E.2d at 292; *see e.g., In re David A. Simpson, P.C.*, 211 N.C. App. 483, 492, 711 S.E.2d 165, 172 (2011). Neither of these factual patterns is present in this case. Instead, consistent with the trial court's findings, the record reflects that Petitioner presented the original note to the trial court for inspection at the hearing. In addition, as Respondents concede, the note contained an indorsement in blank executed by Petitioner. As a result, given that Petitioner was in possession of the original note and that the note in question had been indorsed in blank, the record sufficed to support the trial court's conclusion that Petitioner was the holder of the note. *Manning*, __ N.C. App. at __, 747 S.E.2d at 292 (holding that the petitioner's presentation of the original note, which had been properly indorsed in blank, to the trial court sufficiently supported the trial court's finding that the petitioner was the present note holder).

In addition, Ms. Mueggenberg's affidavit contained additional evidence tending to show that Petitioner held Respondents' note. In her affidavit, Ms. Mueggenberg stated that, based upon her review of the mortgage loan account's business records, she had personal knowledge that "[Petitioner] has indorsed the subject note 'in blank,'" and that "[Petitioner] currently has possession of the subject note." After carefully reviewing the record, we see no basis for determining that the trial court abused its discretion by admitting the Mueggenberg affidavit into evidence. *Simpson* at 488, 711 S.E.2d at 170 (holding that the trial court is entitled to exercise its sound discretion in receiving documents into evidence at a foreclosure proceeding, with appellate review of such decisions being limited to determining whether there was a clear abuse of discretion). As a result, for all of these reasons, we are satisfied that the record adequately supports the trial court's conclusion that Petitioner was the current holder of Respondents' note.[4]

---

[4]In a recent case addressing a similar issue, this Court stated that, "[w]here petitioner, at a foreclosure hearing before the trial court, produced the original mortgage loan note reflecting a blank indorsement and an affidavit stating that the lienholder was in possession of the Note, such was sufficient to establish the lienholder as the holder of the Note." *In re Cornish*, __ N.C. App. __, __, 757 S.E.2d 526, 526 (2014) (unpublished). Although we are not bound by our prior unpublished decisions, *see United Services Automobile Assn. v.*

Finally, Respondents argue that the trial court erred by finding as a fact that the original note had continuously been in Petitioner's physical possession since prior to 15 April 2009 on the grounds that Petitioner introduced evidence that another entity held the note after that date. In support of this contention, Respondents point out that the record contained information tending to show that, on 4 May 2009, Citigroup Global Markets Realty Corporation held Respondents' note. Although the information upon which Respondents rely in advancing this assertion does appear in the record, the Mueggenberg affidavit stated, and the trial court found, that Petitioner had maintained physical possession of the note since prior to 15 April 2009. As a result, given that the trial court's findings "are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary," *Bass*, 366 N.C. at 467, 738 S.E.2d at 175, and the fact that the challenged finding has adequate evidentiary support, the existence of the inconsistency in the record upon which Respondents' argument rests is of no

*Simpson*, 126 N.C. App. 393, 396, 485 S.E.2d 337, 339, *disc. review denied*, 347 N.C. 141, 492 S.E.2d 37 (1997) (holding that this Court is not bound by a prior unpublished decision made by another panel of this Court), we believe that *Cornish* sheds additional light on our decision that the record contains sufficient evidence to establish that Petitioner held Respondents' note.

consequence. Moreover, even if the trial court erred in the course of making this finding, any such error would clearly be harmless given the trial court's finding that Petitioner possessed the original note, which had been indorsed in blank, at the time of the hearing. *Manning*, __ N.C. App. at __, 747 S.E.2d at 292; *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240-41 (2006) (stating that, in the event that other findings support the trial court's decision, the presence of one or more unsupported or erroneous findings constitutes harmless error). As a result, Respondents are not entitled to relief from the trial court's judgment on the basis of their challenge to the trial court's conclusion that Petitioner held Respondents' note.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Respondents' challenges to the trial court's order have merit. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges GEER and STEPHENS concur.

Report per Rule 30(e).